**CONCORD, INC., Plaintiff,**

v.

**DAKOTA STATE BANK, a South Dakota banking association, Defendant.**

**Civ. No. 6–84–1141.**

United States District Court,
D. Minnesota,
Sixth Division.

Oct. 1, 1984.

Ronald H. McLean, and Maureen Holman, Fargo, N.D., submitted defendant's brief.

William A. Schlossman, Jr., Fargo, N.D., submitted plaintiff's brief.

## MEMORANDUM & ORDER

DEVITT, District Judge.

Defendant moves the court for an order dismissing plaintiff's complaint for lack of personal jurisdiction or, in the alternative, a change of venue. Plaintiff opposes both motions.

Both parties submitted their arguments on briefs, without oral arguments.

The court has considered the parties' legal memoranda, affidavits and all of the files, records and proceedings in the case. For the reasons which follow, defendant's motion for an order dismissing plaintiff's complaint for lack of jurisdiction is GRANTED.

Plaintiff Concord, Inc. (Concord) is a North Dakota corporation with its principal place of business in Fargo, North Dakota. Concord manufactures agricultural implements, including air seeders.

Defendant Dakota State Bank is a South Dakota banking association located in Milbank, South Dakota. Milbank is twelve miles from the Minnesota border.

Sometime before March 1984, Concord learned that two Minnesota farmers, Dave and Jack Zehringer, wished to purchase one of its air seeders. The nature and duration of the negotiations concerning this transaction are unclear, but in about March 1984 arrangements were made for the Zehringers to purchase a Concord air seeder. Because Concord prefers not to sell its products directly to retail purchasers, Concord made arrangements to sell the Zehringers' air seeder to Valley International, Inc. (Valley International), a farm implement dealer in Milbank, South Dakota. Valley International was to in turn sell the air seeder to the Zehringers, paying Concord from the proceeds of the sale.

Before agreeing to go ahead with this deal though, Concord sought assurances that it would be paid by Valley International. Valley International had been having financial difficulties and in fact has since gone through liquidation. Defendant Dakota State Bank allegedly provided Concord the assurances it sought. Dakota State Bank was in part financing Valley International's operations and was a secured creditor of Valley International. Plaintiff claims that Dakota State Bank assured it that it would be paid by Valley International as soon as the air seeder was delivered to the Zehringers.

The air seeder was delivered. Concord was not paid. Concord has sued Dakota State Bank on three theories, promissory estoppel, fraud and restitution/implied contract. Neither the Zehringers nor Valley International are parties to this lawsuit.

Concord filed its lawsuit in Minnesota District Court for the Seventh Division, Clay County. Dakota State Bank removed the case to this court and now moves to dismiss plaintiff's complaint for lack of personal jurisdiction or, in the alternative, for an order changing venue.

As a preliminary matter, the court notes that defendant did not waive its objections to jurisdiction by removing the

case to this court. *Cunningham v. Bethlehem Steel Co.,* 231 F.Supp. 934 (S.D.N.Y. 1964).

The court further notes that removal jurisdiction is

a derivative jurisdiction. Where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although in a like suit originally brought in a federal court it would have had jurisdiction.

*Leach v. Federal Crop Insurance Corp.,* 741 F.2d 200 at 201 (8th Cir.1984) (per curiam), citing *Minnesota v. United States,* 305 U.S. 382, 389, 59 S.Ct. 292, 295, 83 L.Ed. 235 (1939). Therefore, the threshold question for this court is whether the state court properly had jurisdiction before removal. The court finds that it did not.

Jurisdiction of Minnesota state courts over a foreign defendant is governed by Minnesota's long arm statute, Minn.Stat. § 543.19. This statute "provides any court in the state with personal jurisdiction over a foreign corporation which, among other things, transacts any business within the state, as long as the cause of action 'arises from' the corporation's enumerated contact with the state." *Medtronic, Inc. v. Mine Safety Appliances Co.,* 468 F.Supp. 1132, 1143 (D.Minn.1979). This statute has been construed to extend jurisdiction to the maximum limits consistent with constitutional limitations. *Wendt v. County of Osceola, Iowa,* 289 N.W.2d 67, 69 (Minn.1979).

The proper constitutional test to use in determining whether a forum state may exercise personal jurisdiction over a foreign corporation is the "minimum contacts" test enunciated in *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under that test, due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notices of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158, quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).

■■■ The application of the minimum contacts test varies, however, depending upon whether or not the claim asserted is related to or arises out of a defendant's contact with the forum state. When a controversy is related to or arises out of a defendant's contact with the forum, the court must consider whether the "relationship among the defendant, the forum, and the litigation" makes it fair to compel a defendant to defend a lawsuit in the forum. When a claim does not arise out of or relate to the foreign corporation's activities in the forum state, a different standard is applied. In that instance, the court must first find "continuous and systematic general business contacts" before it may constitutionally assert jurisdiction. *See,* generally, *Helicopteros Nacionales de Colombia, S.A. v. Hall,* — U.S. —, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■■■ As noted, when a claim arises out of or is related to a defendant's contacts with the forum, the court must consider the "relationship among the defendant, the forum and the litigation" to determine whether assertion of jurisdiction would be proper. This analysis must focus on the defendant's contact with the forum state, not on the defendant's contacts with residents of the forum. *West American Insurance Company v. Westin, Inc.,* 337 N.W.2d 676, 679 (Minn.1983) citing *Hanson v. Denckla,* 357 U.S. 235, 250–55, 78 S.Ct. 1228, 1237–40, 2 L.Ed.2d 1283, 1294–99 (1958); *Aaron Ferer and Sons, Co. v. Atlas Scrap Iron,* 558 F.2d 450, 455 n. 6 (8th Cir.1977). The Supreme Court of Minnesota approaches this analysis by applying what it calls the "purposeful availment standard." *West American Insurance Co.,* 337 N.W.2d at 680. The Supreme Court of Minnesota adopted this standard from the Supreme Court of the United States' holding in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "Purposeful availment" is present when a defendant "invoke[s] both the benefits and the protec-

tions of the forum state's law." *West American Insurance Co.*, 337 N.W.2d at 680. In making the constitutional determination of whether such purposeful availment is present, the court applies the five-factor test set out in *Aftanase v. Economy Baler Co.*, 343 F.2d 187 (8th Cir.1965). *Dent-Air, Inc. v. Beech Mountain Air Service*, 332 N.W.2d 904, 907 (Minn.1983) *citing Vikse v. Flaby*, 316 N.W.2d 276, 282 (Minn.1982).

Due to its proximity to the Minnesota border, Dakota State Bank has a variety of contacts with the state. Approximately 1% of its outstanding loans are to Minnesota residents. *Plaintiff's Memorandum* at page 2. Approximately 3% of its depositors are Minnesota residents who account for roughly 3% of the bank's total deposits. *Id.* The bank holds various security interests and mortgages on property located in Minnesota. *Id.* The bank advertises on the Ortonville, Minnesota, radio station KDIO. *Id.* Plaintiff's claim does not arise out of or relate to these contacts that defendant has with the state of Minnesota.

Plaintiff's complaint does not allege any claims relating to defendant's banking relations with Minnesota residents, nor to the foreclosure of any mortgages or security interests on property located in Minnesota. Plaintiff's complaint does not allege any claims relating to defendant's advertising contracts or practices. No Minnesota residents are parties to this action.

■ Plaintiff's claim is based on a purported agreement between itself and defendant which only incidentally involved Minnesota residents. The court finds that this is an insufficient nexus upon which to base jurisdiction. *See, generally, Toro Company v. Ballas Liquidating Co.*, 572 F.2d 1267 (8th Cir.1978).

Plaintiff asserts that its claim "lies in the wake of" defendant's commercial activities in Minnesota, and that there is therefore a sufficient connection upon which to base jurisdiction. *See, Medtronic, Inc. v. Mine Safety Appliances Co., supra*, at 1144–45. The court disagrees. The court fails to see how guaranteeing the payment of a North Dakota company which made an isolated sale in Minnesota "lies in the wake" of any of defendant's limited contacts with the state.

■ Finding that plaintiff's claim does not relate to or arise out of defendant's contacts with Minnesota, the court must complete its analysis by determining whether defendant has established "continuous and systematic general business contacts" with the state, such that jurisdiction could be asserted in any event. The court finds that it has not.

Defendant's contacts with Minnesota, although they apparently occur on a regular and on-going basis, fall short of those instances in which courts have found "continuous and systematic business contacts" for purposes of jurisdiction. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, supra; Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

What constitutes sufficient "continuous and systematic general business contacts" warranting the assertion of jurisdiction is illustrated by the two above-cited cases. The defendant in *Helicopteros* transacted extensive business in the state of Texas, having purchased more than 80% of its aircraft fleet there, at a cost of more than $4,000,000, and also sent propective pilots to Texas for flight training. Nevertheless, the United States Supreme Court held that the Texas courts lacked jurisdiction to hear a tort action against defendant where the action did not arise out of defendant's activities within the state and, notwithstanding the extensive business defendant transacted in Texas, there was no "continuous and systematic business contact." In *Perkins* a foreign corporation was subject to Ohio state court's jurisdiction in an action wholly unrelated to its activities in the state. The court emphasized the fact that the president of the defendant corporation, a Philippine mining company, virtually ran the company from an office in Ohio during the Japanese occupation of the Philippine Islands.

Defendant's contacts with Minnesota do not constitute "continuous and systematic general business contacts" with the state and, therefore, cannot be a basis upon which this court may assert jurisdiction.

Defendant's motion for an order dismissing plaintiff's complaint for lack of personal jurisdiction is granted. The court being without jurisdiction in this matter, it is without authority to order a change of venue.

Upon the foregoing,

IT IS ORDERED:

That defendant's motion for an order dismissing plaintiff's complaint for lack of personal jurisdiction is GRANTED:

Let judgment be entered accordingly.